IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          :
                           :
     v.                    :          Def. ID: 1702000830
                           :
ROBERT S. BANGS,           :
     Defendant.            :

## ORDER

AND NOW, TO WIT, this 21st day of February, 2018, it is the finding of the Court that:

On May 31, 2017, the Defendant, Robert S. Bangs ("Defendant"), pled no contest to attempted theft over $1,500. This charge arose from Defendant's filing of a false insurance claim alleging he had fallen through a linoleum floor in the mobile home he rented. It turned out that Defendant had tampered with the floor in order to weaken it. Additionally, the injuries he claimed resulted from the incident were actually pre-existing conditions. At the time of the plea, Defendant agreed to pay restitution.[1]

11 *Del. C.* § 4204 gives the Court the authority to order restitution. The statute provides, in pertinent part:

> Wherever a victim of a crime suffers a monetary loss as a result of the defendant's criminal conduct, the sentencing court shall impose as a special condition of the sentence that the defendant make payment of restitution to the victim in such amount as to make the victim whole, insofar as possible, for the loss sustained.[2]

"Section 4106 expanded the use of restitution to cases where individuals are convicted of 'stealing, taking, receiving, converting, defacing, or destroying property.'"[3]

---

[1] Defendant agreed, as part of a no contest plea entered on May 31, 2017, that he would make restitution and he understood that failure to make such payment could result in up to two years in prison. Transcript of May 31, 2017 Plea Hearing at 6-7. The sanction of restitution is as old as Hammurabi's Code, which required that offenders compensate their injured victims. Law of Sentencing, § 3:3 Restitution (2017 Update).

[2] 11 *Del. C.* § 4204(c)(9).

[3] *State v. Elsey*, 2012 WL 1413487, at *1 (Del. Super. Ct. Jan. 20, 2018) (internal citations omitted).

1

The State of Delaware has requested that Defendant pay restitution to the victim, Windsor Mount Joy Insurance Company ("Windsor"), in the amount of $229,360.99. This valuation includes the legal fees Windsor incurred while defending the insureds as well as $91.73 in fees paid to the State. Defendant now claims that he should not have to pay restitution, as, in his view, there is no direct connection between Defendant's crime and Windsor's loss, nor is the insurance company a proper "victim." Therefore, this is a purely legal question concerning whether restitution is owed, not a factual question regarding the evidentiary support for the amount of the obligation. Furthermore, Defendant claims that he will be unable to pay such a high restitution amount, as he currently receives government assistance and disability compensation.

First, the Court examines 11 *Del. C.* § 841, which addresses restitution associated with theft charges. The statute provides, "Upon conviction, the sentencing judge shall require *full* restitution to the victim for any monetary losses suffered…"[4] In the Court's view, this means that no limitation is placed on the amount Defendant may be required to pay. Victims are to be compensated to the greatest extent possible in order to ensure that he or she is made whole. Additionally, the Delaware Superior Court explained in *State v. Elsey* that, "A sentencing court's authority to order restitution is not limited to out-of-pocket losses or the types of losses the Court is required to address under Section 4106. The court has broad discretion to determine restitution."[5]

Moreover, 11 *Del. C.* § 4106, referenced above, further elaborates on what restitution may be awarded. The Delaware Supreme Court has held that "…the statutory scheme for restitution expressly provides for the victim to recover for the value of the property rights lost or diminished by the defendant's criminal conduct, *as well as* 'direct out-of-pocket losses, loss of earnings and

---

[4] 11 *Del. C.* § 841 (emphasis added).
[5] *Elsey,* 2012 WL 1413487 at *1.

2

other expenses and inconveniences.'"[6] Thus, the central inquiry is whether the restitution sought in this case is a direct loss incurred by Windsor as a result of Defendant's crime. Given that the money owed consists of the legal fees and fee to the State that Windsor incurred while defending the related civil suit, it follows that, in a case where the theft occurred through a false insurance claim, the fees associated with the civil suit would be a direct loss flowing from Defendant's criminal activity. The false claim goes to the heart of the criminal conduct. Therefore, it is only fair that the victim would receive compensation for the expenses of defending against the false claim. Such action is well within the Court's broad discretion to order restitution.

Furthermore, the Supreme Court has ruled that insurers are to be included in the definition of "victims" who may claim restitution.[7] Finally, the Court has found that attorney's fees may be included in a defendant's restitution amount.[8] Here, there is no indication that the restitution sought goes beyond the direct out-of-pocket losses caused by Defendant's criminal activity. It is wholly permissible for the State to request that restitution be made to Windsor which reimburses the company for pertinent legal fees.

However, any monies paid out as part of the civil suit that stemmed from these allegations must be credited to Defendant's restitution responsibility. Defendant filed his false complaint against the homeowners on May 12, 2015. The case eventually proceeded to trial. The jury found for the Defendants. As a result, the Court entered an order on March 14, 2017 requiring the

---

[6] *Benton v. State*, 711 A.2d 792, 796 (Del. 1998); *see also United States v. Holthaus*, 486 F.3d 451-457-58 (8th Cir. 2007) (holding that restitution for legal fees incurred by a bankruptcy trustee was valid because the fees were a direct result of the defendant's fraud); *United States v. DeRosier*, 501 F.3d 888, 895 (8th Cir. 2007) (finding that restitution for a bank's costs associated with investigating and pursuing defendant's criminal conduct was valid); *United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004) ("Because we conclude that the attorney's fees incurred in the civil case were a direct result of DeGeorge's criminal conduct, we affirm the district court's restitution award.").

[7] *Pratt v. State*, 486 A.2d 1154, 1160-60 (Del. 1983); *see also* 92 A.L.R.5[th] 35, § 25[a] (originally published 2001) (explaining that numerous jurisdictions have determined that an insurance company is a "victim," where the insurer has made payments on behalf of the insured in order to defend against a defendant's false or fraudulent claim).

[8] *Mott v. State*, 49 A.3d 1186, 1188 (Del. 2012).

3

Plaintiff (our Defendant here) to pay $3,721.29 in costs and fees. Therefore, the Court finds that restitution must be reduced by that value. Defendant owes restitution in the amount of $225,639.70.

While Defendant has claimed a general inability to pay, the Court only sees it appropriate for this information to be factored in when determining a payment plan for Defendant.[9] Obviously, Defendant's present financial circumstances will result in rather small payments made on a flexible schedule over time as conditions permit. There will not be a violation of probation for asking more than can reasonably be expected, and Defendant is not exposed to the spectre of debtor's prison. Yet the point is made that restitution is an essential component of the criminal justice system with a balance struck between the competing interests at play.

A modified sentencing order will be generated to reflect this decision.

**IT IS SO ORDERED.**

Richard F. Stokes, Judge

cc: Derek Gay, Esq.
Michael Capasso, Esq.

---

[9] *Pratt* provided the following as one of the guidelines for the Superior Court to consider when examining restitution issues: "The defendant's ability to pay is an element to be considered in determining the amount of restitution and the schedule of payments." 486 A.2d at 1161.

4